UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN THURMON SR. and TIFFANY THURMON, jointly KEVIN THURMON SR., individually; TIFFANY THURMON, individually and KEVIN THURMON JR., individually,<br><br>Plaintiffs,<br><br>v.<br><br>MOUNT CARMEL HIGH SCHOOL, JOHN STIMLER, jointly and individually; FRANK LENTI, jointly and individually, and JERROLD BLEW, jointly and individually,<br><br>Defendants. | No. 15 C 4500<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Mount Carmel High School, John Stimler, Frank Lenti and Jerrold Blew's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendants' Motion to Dismiss is granted.

## I. BACKGROUND

This case arises out of a disciplinary incident and related actions that Defendants Mount Carmel High School ("Mount Carmel"), John Stimler ("Stimler"), Frank Lenti ("Lenti") and Jerrold Blew ("Blew") (collectively "Defendants") took against Plaintiff Kevin Thurmon Jr. ("Plaintiff" or "Kevin Jr."). Mount Carmel is a private parochial school that relies on tuition, grants, charitable donations and federal funds. Kevin Jr., a former student and football player at Mount Carmel, is an African-American male. Defendants Stimler, Lenti, and Blew are non-African Americans employed by Mount Carmel. At the time of the incidents in question, Stimler was the school principal and Lenti and Blew were both teachers and football coaches.

1

Kevin Jr. began attending Mount Carmel in his freshman year of high school, during which time he was diagnosed with attention deficit hyperactivity disorder ("ADHD") and classified as a student with learning disabilities under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. 1401(3)(i)(ii). Beginning in Kevin Jr.'s freshman year, Mount Carmel provided him with accommodations for his disability including extra time on tests and tutoring opportunities.

Plaintiff alleges that in or around August 2014, Defendants Lenti and Blew began to repeatedly harass and threaten him by telling him that he would "fail and repeat the 12th grade," that he "had no talent," that he "was not a good football player," and that he was "not as good as he thought he was." Plaintiff also alleges that at some point he was falsely accused of cheating "which significantly lowered his grade," although he does not identify his accuser. Additionally, Plaintiff asserts that Blew refused to grant him accommodations he was entitled to because of his ADHD and that, behind Plaintiff's back, Lenti contacted Division 1 schools that had offered Kevin Jr. football scholarships and told the schools that Kevin Jr. planned to reject their offers. As a result, Plaintiff says, the schools retracted their scholarship offers.

In April of 2015, during his senior year, Kevin Jr. was involved in a disciplinary incident with several other students. Neither Plaintiff's Third Amended Complaint ("TAC") nor these briefings explain what the incident involved, but each of the implicated students was suspended for three days. However, Kevin Jr. alone was suspended for the rest of the school year, required to complete his semester at home, and prohibited from attending school functions including graduation and prom. Defendants assert that the other students were all African-American although Kevin Jr. says that one of the other students was Caucasian.

Following this incident, Plaintiff requested to meet with Mount Carmel and review his

suspension but this request was denied. Plaintiff filed this lawsuit on May 21, 2015. In the TAC, he alleges violation of 42 U.S.C. § 1981 (Count I), violation of § 504 of the Rehabilitation Act (Count II), and state law claims including intentional interference with prospective economic advantage (Count III), breach of contract (Count IV), and intentional infliction of emotional distress (Count V). Plaintiff also filed a Temporary Restraining Order ("TRO") in May 2015 requesting permission to attend his graduation ceremony, which was denied by Judge Dow sitting in as Emergency Judge for this Court.

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not test the merits of a claim, but rather the sufficiency of the complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). However, "legal conclusions and conclusory allegations merely reciting the elements of the claim" are not entitled to a presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680-81). Rather, claimants "must give enough details about the subject-matter of the case to present a story that holds together." *Id*. "A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546, 127 S. Ct. 1955, 1959 (2007).

## III. DISCUSSION

As a preliminary matter, Defendants argue that I should take judicial notice of the

findings established in this Court's May 23, 2015 Order ruling on the TRO, including the testimony that the other students involved in the disciplinary incident apologized and showed contrition for their role, while Kevin Jr. did not. But as Plaintiff correctly points out, the Seventh Circuit is cautious about permitting a court to take judicial notice of facts from prior proceedings. *Garden City Employees' Retirement System v. Anixter Intern., Inc.*, 2011 WL 1303387 at *11 (N.D. Ill. 2011). In any case, my reasoning does not rely on the contents or outcome of the TRO hearing. Thus I am considering the motions and the TAC on their own merits without establishing judicial notice of facts drawn from the TRO proceeding.

**A. The § 1981 Claim (Count I)**

Defendants assert that Plaintiffs have failed to state a cause of action under § 1981. To state a claim under § 1981, a claimant must "(1) be a member of a racial minority; (2) show that the defendants intended to discriminate on the basis of race; and (3) show that the defendants' activities concern the making, performance, modification, or termination of a contract, the enjoyment of the benefits of a contractual relationship, or the conditions of a contractual relationship." *Jacobeit v. Rich Tp. High School Dist. 227*, 673 F.Supp.2d 653, 660 (N.D. Ill. 2009). I agree with Defendants that Plaintiff has not adequately pleaded prongs two and three.

Plaintiff asserts that the totality of circumstances he was subjected to—including the alleged verbal harassment, cheating accusation, unauthorized contact with colleges, and disciplinary action—was a result of racial discrimination that was not visited upon white students at Mount Carmel. Yet to the extent that Plaintiff does allege a nexus between racial discrimination and Kevin Jr.'s specific treatment, it is a conclusory and unsupported allegation that does not meet the *Iqbal/Twombly* standards laid out above. Indeed, the TAC itself does not reference racial discrimination when recounting the factual allegations except to state

4

tautologically at the end of the facts section that "the treatment of Plaintiffs was based on their race in that non-black students received substantially better treatment." To supplement this argument, Plaintiff offers in his brief that one of the other students involved in the disciplinary incident who received a lighter punishment was a white student. Nevertheless, without a more detailed set of allegations describing the foundation for Plaintiff's belief that his race was the basis for his treatment by Defendants, I find that he has not demonstrated the second factor of the three-part test.

Likewise, the third prong requires a showing of deprivation of a contractual relationship that Plaintiff has not sufficiently alleged. In his TAC, Plaintiff attached Mount Carmel's Registration/Tuition Payment Contract, the Parent-Student Handbook, and Kevin Jr.'s Learning Disability Accommodation Guide and points to these as the contractual basis of the §1981 claim. The Registration/Tuition Payment Contract does not contain any terms that were violated based on the facts presented in the TAC. Thus, to the extent there is a contractual relationship at issue in this case, it must be based on the Anti-Discrimination/Harassment Policy in the Parent-Student Handbook and the accommodations provided in Kevin Jr.'s Accommodation Guide.

The Anti-Discrimination/Harassment Policy does provide for progressive discipline including requiring a student to complete a semester from home, so Kevin Jr.'s suspension would not constitute a deprivation of the contractual relationship. Plaintiffs also allege harassing conduct by Defendants Lenti and Blew that could serve as a basis for deprivation of a contractual relationship. However, the Anti-Discrimination/Harassment Policy only prohibits such conduct if it is based on the target's protected status. As discussed above, Plaintiff made only vague and conclusory allegations of racial and disability discrimination, without providing any facts

5

necessary to draw a causal inference between Defendants' actions and Plaintiff's race and/or disability. The same is true for an alleged violation based on Kevin Jr.'s Accommodation Guide. Furthermore, that document dates to the 2013-2014 school year and Plaintiff has not made allegations that he was deprived of needed resources during that year.

Thus, Plaintiffs have not properly pleaded an intent to discriminate based on race or the deprivation of a contractual relationship, as is required to proceed with a § 1981 claim. For these reasons, Count I is dismissed.

**B. The Rehabilitation Act Claim (Count II)**

Next, Defendants argue that Plaintiff failed to state a cause of action under § 504 of the Rehabilitation Act. Section 504 requires schools to accommodate a student's disability, provide students with disabilities with equal opportunities to participate in extracurricular activities, account for disabilities when imposing disciplinary measures, and prohibits retaliation against students who request accommodations. To state a discrimination claim under the Rehabilitation Act, Plaintiff must allege that he was: "(1) an individual with a disability; (2) otherwise qualified for the benefit sought; (3) discriminated against solely because of his handicap; and (4) discriminated against by an entity that received federal financial help." *Khan v. Midwestern University*, 2015 WL 7710369 at *4 (N.D. Ill 2015) (citing *Grzan v. Charter*, 104 F.3d 116, 119 (7th Cir. 1997)). The third prong—discrimination solely on the basis of the claimant's handicap—requires a showing that the Defendant either "(1) intentionally acted on the basis of disability, (2) refused to provide a reasonable modification to permit access to the program, or (3) enforced rules that disproportionally impacted disabled people." *Doe ex rel. Smith v. Sobeck*, 941 F.Supp.2d 1018, 1023 (S.D. Ill. 2013) (citing *Washington v. Indiana High Sch. Athletic Ass'n*, 181 F.3d 840, 847 (7th Cir. 1999) (interpreting identical language under the Americans

6

with Disabilities Act, 42 U.S.C. § 12132)). Ultimately, the Rehabilitation Act requires a reasonable modification when "*necessary* to ensure that the disabled have equal access to the benefits of that program" and is violated when "but for the disability, the disabled person would not have been excluded from the program." *Doe ex rel. Smith*, 941 F.Supp.2d at 1023 (citing *Washington*, 181 F.3d at 849) (emphasis in original).

The TAC includes a conclusory paragraph alleging that Defendants violated § 504, but provides very little detail that could support an inference of intentional discrimination, refusal to provide reasonable modifications, or disproportionate impact on disabled people. For instance, Plaintiff's allegation that he was deprived of accommodations for his ADHD when he was suspended from school is unaccompanied by any showing that he needed certain accommodations and was not given them after the suspension. The only attached document referencing Plaintiff's ADHD Accommodation Plan was from the 2013-2014 school year, and even if that document remained operative in 2015, the TAC contains no specific allegations that the Accommodation Plan was not followed even while Kevin Jr. completed his schooling at home. Likewise, the claim that Defendant Blew retaliated when Kevin Jr. requested accommodations for his disability is a bare conclusory allegation that merely reiterates the pleading standard without providing factual support. There is simply no suggestion in the TAC that Kevin Jr.'s disability was connected to any of Defendants' conduct or that Defendants' alleged failure to accommodate the disability was unreasonable or resulted in denying Kevin Jr. equal benefits of the education offered by Mount Carmel. Thus, Plaintiff has not met the third prong of the four-part test to state a claim under § 504.

Plaintiff also alleges that because Defendants refused to hold a hearing process regarding the disciplinary measures, they deprived Kevin Jr. of procedural due process

7

safeguards. Defendants counter that the Rehabilitation Act contains no such requirements. Numerous courts have made similar observations and declined to read a private cause of action into Section 504 to enforce regulatory due process rights. *See, e.g., H. v. Montgomery Cnty. Bd. of Educ.,* 784 F.Supp.2d 1247, 1264 (M.D.Ala.2011) (noting that "the weight of authority holds that there is no private right of action to enforce § 504's special education regulations, to the extent these regulations create any duties separate and apart from the statutory text," but ultimately not deciding whether there was a private right of action for purposes of that particular case); *Power ex rel. Power v. Sch. Bd. of City of Virginia Beach,* 276 F.Supp.2d 515, 519 (E.D. Va. 2003); *Board of Educ. of Howard County v. Smith*, 2005 WL 913119 at 2 (D. Md. 2005); and *Guckenburger v. Boston University*, 974 F.Supp. 106, 143 (D. Mass. 1997). While Plaintiffs cite a recent California case that distinguishes *Power ex rel. Power* and finds a right of action based on procedural violations, that case involved a theory of disability-based deprivation that included a refusal to consider the affected students' trauma. *P.P. v. Compton Unified School District*, 2015 WL 5755964 (C.D. Cal. 2015). Here, by contrast, Kevin Jr. admits that Mount Carmel did make accommodations for him starting in his freshman year. More importantly, he fails to raise an inference that any of the events arising in his senior year stemmed from disability-based discrimination, so to the extent that he was denied any procedural rights, that claim does not fall under the scope of the Rehabilitation Act.

Finally, to plead retaliation under the Rehabilitation Act, Plaintiff must show that he (1) "engaged in a statutorily protected activity"; 2) "suffered an adverse action"; and 3) "there was a causal connection between the two events." *Blazquez v. Bd. of Educ. of City of Chicago*, 2006 WL 3320538 at *5 (N.D. Ill. 2006) (citing *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006)). As discussed above, Plaintiff's assertions regarding the retaliation

claim amount entirely to legal conclusions. There are no factual assertions that indicate retaliation based on Plaintiff's protected status or even a clear timeline of events that could raise such an inference. As such, Plaintiff has failed to plead his Rehabilitation Act claim and Count II is dismissed.

**C. The State Law Claims (Counts III, IV, and V)**

The only basis for continued federal jurisdiction over the remaining state law claims is supplemental jurisdiction. 28 U.S.C. § 1367. While the district court has broad discretion to exercise supplemental jurisdiction "[w]hen all federal claims in a suit in federal court dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citation omitted). Thus, having dismissed both federal law claims, I am dismissing the remaining state law Counts III, IV and V without prejudice. *See also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted and the case is dismissed.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: June 13, 2016